# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION,

   *Plaintiff*,

  v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

   *Defendants*.

Civil Action No. 21-2627 (TJK)

## **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

AMERICAN CIVIL LIBERTIES UNION

Eunico Cho (admitted *pro hac vice*)
National Prison Project
915 Fifteenth St. N.W., 7th Floor
Washington, D.C. 20005
Tel: (202) 548-6616
echo@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
ACLU Foundation of the District of Columbia
915 Fifteenth St. NW, 2nd Floor
Washington, D.C. 20005
Tel: (202) 601-4266
aspitzer@acludc.org

ROBBINS, RUSSELL, ENGLERT,
 ORSECK & UNTEREINER LLP

Leslie C. Esbrook (D.C. Bar No. 1670737)
Alison C. Barnes (D.C. Bar No. 484184)
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
lesbrook@robbinsrussell.com

January 5, 2022

*Counsel for Plaintiff American
Civil Liberties Union*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD .................................................................................................................... 5

ARGUMENT ............................................................................................................................... 6

I.      THE ACLU'S FOIA REQUEST CONTAINS A REASONABLE DESCRIPTION OF
        THE REQUESTED RECORDS ................................................................................... 6

        a.      The Request Describes The Records Sought With Sufficient Detail ................... 6

        b.      Defendants' Characterization Of The Request Is Based On A Strained Reading
                And Avoidance Of The Substance Of The Request ............................................... 7

II.     DEFENDANTS' UNDUE BURDEN ARGUMENT IS FLAWED ............................... 11

III.    CONCERNS ABOUT THE CLARITY OF CERTAIN INDIVIDUAL REQUESTS
        ARE NOT GROUNDS FOR DISMISSAL OF THE COMPLAINT ............................. 16

CONCLUSION .......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Am. Ctr. for Law & Justice v. Dep't of Homeland Sec.*,
 Case No. 1:21-cv-01364 (TNM) 2021 WL 5231939 (D.D.C. Nov. 10 2021)
 ................................................................................................................9, 10, 12, 14

*Am. Fed'n of Gov't Emps. v. Dep't of Commerce*,
 907 F.2d 203 (D.C. Cir. 1990) .......................................................................10, 12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..............................................................................................5

*Assassination Archives and Research Ctr., Inc. v. CIA*,
 720 F. Supp. 217 (D.D.C. 1989) .........................................................................13

*Ayuda, Inc. v. Fed. Trade Comm'n*,
 70 F. Supp. 3d 247 (D.D.C. 2014) .......................................................................13

*Biear v. Att'y Gen. United States*,
 905 F.3d 151 (3d Cir. 2018)..................................................................................7

*Borden v. FBI*,
 27 F.3d 554 (1st Cir. 1994) (Tbl.) (per curiam)...................................................10

*Bristol-Myers Co. v. FTC*,
 424 F.2d 935 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 824 (1970) ...................2, 16

*Cable News Network, Inc. v. FBI*,
 271 F. Supp. 3d 108 (D.D.C. 2017) .....................................................................10

*Campaign for Accountability v. Dep't of Justice*,
 278 F. Supp. 3d 303 (D.D.C. 2017) .......................................................................5

*Cause of Action Inst. v. IRS*,
 390 F. Supp. 3d 84 (D.D.C. 2019) .........................................................................5

*Colgan v. Dep't of Justice*,
 Civil Action No. 14-cv-740 (TSC), 2020 WL 2043828 (D.D.C. Apr. 28, 2020).............11, 14

*Dale v. Internal Revenue Service*,
 238 F. Supp. 2d 99 (D.D.C. 2002) .......................................................................10

*Dep't of Air Force v. Rose*,
 425 U.S. 352, 361 (1976)........................................................................................1

## TABLE OF AUTHORITIES—Continued

Page(s)

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749, 773 (1989) ........................................................................1

*Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) ................................................................................5

*Ferri v. Bell*,
  645 F.2d 1213 (3d Cir. 1981), *modified on other grounds*, 671 F.2d 769 (3d
  Cir. 1982) ...........................................................................................16

*Freedom Watch, Inc. v. Dep't of State*,
  925 F. Supp. 2d 55 (D.D.C. 2013) ....................................................10, 14

*Hall & Associates v. EPA*,
  83 F. Supp. 3d 92 (D.D.C. 2015) ...........................................................10

*Hall v. CIA*,
  881 F. Supp. 2d 38 (D.D.C. 2012) ..........................................................13

*Irons v. Schuyler*,
  465 F.2d 608 (D.C. Cir. 1972) ...............................................................10

*Jankovic v. Int'l Crisis Grp.*,
  494 F.3d 1080 (D.C. Cir. 2007) ..............................................................15

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ..............................................................................11

*Krohn v. Dep't of Justice*,
  628 F.2d 195 (D.C. Cir. 1980) ...............................................................13

*Kwoka v. IRS*,
  Civil Action No. 17-cv-1157 (DLF), 2018 WL 4681000 (D.D.C. Sept. 28,
  2018) ...................................................................................................14

*Latham v. Dep't of Justice*,
  658 F. Supp. 2d 155 (D.D.C. 2009) ...................................................10, 13

*Leopold v. Dep't of Justice*,
  130 F. Supp. 3d 32 (D.D.C. 2015) ......................................................9, 12

*Marks v. Dep't of Justice*,
  578 F.2d 261 (9th Cir. 1978) ............................................................10, 13

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Miller v. Casey,*
    730 F.2d 773 (D.C. Cir. 1984) ...................................................................13

*Nat'l Sec. Counselors v. CIA,*
    960 F. Supp. 2d 101 (D.D.C. 2013) ......................................................10, 13

*Nat'l Sec. Counselors v. CIA,*
    969 F.3d 406 (D.C. Cir. 2020) .................................................................13

*Nation Magazine v. U.S. Customs Serv.,*
    71 F.3d 885 (D.C. Cir. 1995) ...................................................................12

*New Orleans Workers' Ctr. for Racial Justice v. Immigration & Customs
    Enforcement,*
    373 F. Supp. 3d 16 (D.D.C. 2019) .......................................................9, 17

*Oglesby v. Dep't of Army,*
    920 F.2d 57 (D.C. Cir. 1990) ..............................................................11, 12

*Pinson v. Dep't of Justice,*
    80 F. Supp. 3d 211 (D.D.C. 2015) .......................................................14, 16

*Pub. Citizen, Inc. v. Dep't of Educ.,*
    292 F. Supp. 2d 1 (D.D.C. 2003) ...........................................................14

*Pub. Emps. for Envtl. Responsibility v. Envtl. Prot. Agency,*
    314 F. Supp. 3d 68 (D.D.C. 2018) ................................................... *passim*

*Ruotolo v. Dep't of Justice,*
    53 F.3d 4 (2d Cir. 1995) ...........................................................................17

*Seife v. Dep't of State,*
    298 F. Supp. 3d 592 (S.D.N.Y. 2018) ........................................................7

*Serv. Emps. Int'l v. Castle Hill Healthcare Providers, LLC,*
    234 F. Supp. 3d 89 (D.D.C. 2017) ............................................................13

*Shapiro v. CIA,*
    170 F. Supp. 3d 147 (D.D.C. 2016) .................................................. *passim*

*Stewart v. Nat'l Educ. Ass'n,*
    471 F.3d 169 (D.C. Cir. 2006) ...................................................................5

*STS Energy Partners LP v. FERC,*
    82 F. Supp. 3d 323 (D.D.C. 2015) ...........................................................13

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Tereshchuk v. Bureau of Prisons*,
 67 F. Supp. 3d. 441 (D.D.C. 2014), *aff'd*, No. 14-cv-5278, 2015 WL 4072055
 (D.C. Cir. June 29, 2015) ................................................................................11, 12

*Truitt v. Dep't of State*,
 897 F.2d 540 (D.C. Cir. 1990) ........................................................................12, 16

*Wolf v. CIA*,
 569 F. Supp. 2d 1 (D.D.C. 2008) ...........................................................................13

*Yeager v. DEA*,
 678 F.2d 315 (D.C. Cir. 1982) ..........................................................................6, 11

**Statutes & Rules**

5 U.S.C. § 552 ..................................................................................................6, 12

6 C.F.R. § 5.3 ...................................................................................................6, 17

Fed. R. of Civ. P. 12 ..............................................................................................5

**Other Authorities**

ICE Directive: Notification and Reporting of Detainee Deaths, Oct. 1, 2012 ................................2

U.S. Dep't of Homeland Security, Privacy Impact Assessment for the Alien
 Medical Records Systems ("AMRS PIA"), DHS/ICE/PIA-029 (July 25, 2011) ...................15

U.S. Dep't of Homeland Security, Privacy Impact Assessment for the Alien
 Medical Tracking Systems ("AMTS PIA"), DHS/ICE/PIA-031 (Sept. 26,
 2011) ..................................................................................................15, 16

U.S. Dep't of Homeland Security, Privacy Impact Assessment for the electronic
 Health Records (eHR) System ("eHR PIA"), DHS/ICE/PIA-037 (July 24,
 2013) ........................................................................................................15

U.S. Dep't of Homeland Security, Privacy Impact Assessment Update for the
 electronic Health Records (eHR) System, DHS/ICE/PIA-037(a) (Apr. 26,
 2018) ........................................................................................................15

U.S. Immigration and Customs Enforcement, IHSC Directive: 03-32, Significant
 Detainee Illness (SDI) (effective Dec. 1, 2015) ..............................................................15

Plaintiff American Civil Liberties Union ("the ACLU") respectfully submits this memorandum in opposition to the motion to dismiss filed by Defendants U.S. Department of Homeland Security ("DHS"), U.S. Department of Homeland Security Office of Inspector General ("DHS OIG"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants").

## INTRODUCTION

The central purpose of the Freedom of Information Act ("FOIA") is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). This case involves the ACLU's use of its democratic right to request records from Defendants. The ACLU's FOIA request, which contained ten numbered parts, sought information on a specific subject matter— ICE's practice of releasing detainees from its custody while they are nearing death at hospitals and off-site medical facilities, in an apparent effort to cover up deaths in ICE custody. That request related directly to FOIA's "basic policy" of vindicating "the citizens' right to be informed about 'what their government is up to.'" *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Defendants should not be allowed to evade their statutory responsibility and delay or defeat the ACLU's inquiry through their meritless motion to dismiss.

Defendants did not respond to the ACLU's FOIA request within the statutorily proscribed time frame, nor did they ask to confer with the ACLU regarding it. Instead, after the ACLU filed this lawsuit seeking the production of responsive information, Defendants moved to dismiss on the ground that the FOIA request did not "reasonably describe" the requested records. (Mem. 1).

Defendants' motion fails on multiple levels. First and foremost, it is based on a caricature of the ACLU's FOIA request. Defendants ignore clarifying information contained in the

1

individual requests—including names of individual detainees, dates, and examples of the types of documents sought—and instead focus on introductory and connector words that, they contend, render the requests indecipherable or overly broad.  A fair reading of the individual requests demonstrates the fallacy of Defendants' position.  Second, Defendants complain—without any support—that complying with the requests will require the agencies to "become wide-ranging investigators" (Mem. 12) and compile information that does not exist in composite form. That is wrong.  There is every reason to believe that responsive information exists and can be produced by knowledgeable agency personnel.  Finally, to the extent Defendants believe that aspects of certain individual requests are unclear, they should confer with the ACLU to resolve their questions.  As the D.C. Circuit has instructed, the requirement for records to be reasonably described is "not to be used as a method of withholding records," much less used for the wholesale dismissal of a complaint seeking to enforce a valid FOIA request.  *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 824 (1970).

## BACKGROUND

For years, the media has reported on ICE's pattern of releasing terminally ill detainees from custody while they are at off-site hospitalization facilities.  Compl. ¶¶ 5-7.  This practice, consistent with ICE's broad "culture of secrecy," *id.* ¶ 5, allows ICE to minimize the number of in-custody deaths that it reports pursuant to federal requirements, *see* ICE Directive: Notification and Reporting of Detainee Deaths, Oct. 1, 2012, https://www.ice.gov/doclib/dro /pdf/notification_and_reporting_of_detainee_deaths.pdf.  By releasing detainees from custody shortly before they die, ICE also avoids its obligation to investigate the circumstances of the deaths and minimizes its required medical expenditures.  Compl. ¶ 7.

Numerous reports into detainee deaths by journalists and advocacy groups have revealed that guards at ICE facilities "falsified records to hide apparent dereliction of duty" and committed "other failures that point to serious lack of care."  Compl. ¶ 8.  In the case of Martin Vargas Arellano, a hospitalized detainee who died three days after ICE released him from its legal custody, a federal judge noted that it appeared ICE had "actively conceal[ed]" the death from the court, which raised "significant concerns regarding the Government's actions and lack of candor."  *Id.* ¶ 6(a) (quoting Order, *Roman v. Wolf*, ED CV 20-00768 TJH, Dkt. 1031 (C.D. Cal. Mar. 20, 2021)). A House Committee on Oversight and Reform report similarly found that ICE "failed to release investigative reports on detainee deaths in custody in violation of federal law" and that problems at detention centers have grown "far worse during the coronavirus pandemic." *Id.* ¶ 9 (internal quotation marks omitted).

Consistent with its founding principles and mission, the ACLU seeks to understand and shed light on ICE's true practices.  Compl. ¶ 14.  To that end, the ACLU submitted a ten-part FOIA request to DHS, DHS OIG, and ICE on July 14, 2021, for records concerning the release of ICE detainees from custody while receiving treatment at hospitals or off-site medical care facilities. *Id.* ¶ 18 & Ex. A.  The first three sub-parts of the request were related.  Request 1 asked for all records "relating to the hospitalization, death, decision to release from custody, or release from custody" of four named individuals.  *Id.* (Request 1).  The request provided each individual's approximate date of death, the ICE detention facility where each was held prior to hospitalization, and each individual's location of death.  *Id.*  Requests 2 and 3 sought "DHS OIG reports of investigation" and "ICE OPR reports of investigation" that were "identified in any of the records" related to the four named individuals.  *Id.*

3

Another four of the ten sub-parts were similarly related.  Request 4 asked for all records during a defined period (January 1, 2019 to present) "regarding the release of detainees from custody who are hospitalized or transferred from detention for off-site medical care."  Compl. ¶¶ 18-19 & Ex. A.  Request 6 asked for all records "regarding detainees who are hospitalized or transferred from detention for off-site medical care and subsequently released from ICE custody while hospitalized or while receiving off-site medical care."  *Id.*  Request 7 asked for records for those detainees who, subsequent to their release, "died while hospitalized;" Requests 8 and 9 asked for records related to the release of detainees from the hospital after hospitalization "due to COVID-19."  With regard to these individual requests, the ACLU listed types of formal agency documentation it sought:  ICE and ICE Health Service Corps ("IHSC") "directives, policies, procedures, protocols, and trainings," and "significant incident reports (SIRs), significant event notification reports (SEN), investigatory reports, and associated documentation."  *Id.* (Requests 6-7, 9).

The remaining two individual requests asked for discrete categories of documentation relating to the same types of detainees.  Request 10 asked for "bills, invoices, charges, or payment" related to treatment for detainees who were released from custody while hospitalized.  Compl. ¶ 18 & Ex. A.  And Request 5 asked for documentation to "identify detainees who were hospitalized or transferred from detention for off-site medical care."  *Id.*  This request specified the types of documentation that would likely contain such information: "[D]atabases, spreadsheets, lists, and other data compilations."  *Id.*  At the end of the ACLU's FOIA request, it invited the agencies to call the ACLU at the number provided "if you have any questions or wish to obtain further information about the nature of the records in which we are interested."  *Id.* Ex. A at 14.

Defendants acknowledged receipt of the FOIA request and DHS OIG denied the ACLU's

request for expedited processing.  Compl. ¶¶ 21-23. The agencies took no further action.  Two-and-a-half months after the agency first acknowledged the ACLU's FOIA request and nearly three months after the ACLU filed its request, the ACLU brought suit to enjoin Defendants from withholding the requested information.  Defendants have not attempted to confer with the ACLU. Nor have they produced a single record in response.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A FOIA plaintiff states a claim when it alleges that "an agency has (1) improperly (2) withheld (3) agency records."  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (internal quotation marks omitted).  The complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

FOIA cases "typically and appropriately are decided on motions for summary judgment, rather than on motions to dismiss."  *Cause of Action Inst. v. IRS*, 390 F. Supp. 3d 84, 92 (D.D.C. 2019) (internal quotation marks and citation omitted); *see Campaign for Accountability v. Dep't of Justice*, 278 F. Supp. 3d 303, 313 (D.D.C. 2017) ("[I]t is rare in FOIA cases for a court to grant a Rule 12(b)(6) motion to dismiss that assails the *merits* of the plaintiff's pleading.").

**ARGUMENT**

## I. THE ACLU'S FOIA REQUEST CONTAINS A REASONABLE DESCRIPTION OF THE REQUESTED RECORDS

### a.  The Request Describes The Records Sought With Sufficient Detail.

Defendants' sole argument in favor of dismissal is that the ACLU has failed to "reasonably describe[]" the records sought.  Mem. 4-12 (quoting 5 U.S.C. § 552(a)(3)(A); 6 C.F.R. § 5.3(b)).[1] That is so, Defendants aver, because the ACLU's requests are either vague or impermissibly broad. Neither is true.  The ACLU's FOIA request satisfies the "linchpin inquiry" when evaluating requests for reasonable description, which is "whether the agency is able to determine precisely what records (are) being requested." *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks omitted); *see* 6 C.F.R. § 5.3(b) (description must allow personnel to locate records "with a reasonable amount of effort" through an "organized, non-random search").

The request "precisely define[s] by subject matter" the documents and communications sought.  *Pub. Emps. for Envtl. Responsibility v. Envtl. Prot. Agency*, 314 F. Supp. 3d 68, 81 n.5 (D.D.C. 2018).  Fundamentally, the request asks for records on one subject—ill detainees released from custody while hospitalized or at off-site medical facilities.  Request 1 asks for materials related to the (1) "hospitalization"; (2) "death"; (3) "decision to release from custody"; or (4) "release from custody" of four named individuals (Teka Gulema, Johanna Medina Leon, Jose Ibarra Bucio, and Martin Vargas Arellano) at specific periods of time.  Requests 2-3 seek reports that relate to or reference one or more of those individuals.  Compl. Ex. A at 3-4.  Requests 4 and 6-10 seek information on "detainees who are hospitalized or transferred from detention for off-site

---

[1] The ACLU agrees with Defendants (Mem. 12) that the question whether its FOIA request complies with DHS regulations is not materially different from the question whether the request complies with 5 U.S.C. § 552(a)(3)(A).

medical care and subsequently released from ICE custody" while in the hospital or off-site medical facility.  *Id.*  Two of these sub-parts further narrow the information sought to information on (1) detainees who, subsequent to their release, "died while hospitalized" (Request 7); and (2) detainees who were released from custody while in a hospital after being hospitalized "due to COVID-19" (Request 8; *see* Request 9).  *Id.*  These individual requests "convey[] exactly which records [plaintiff] seeks."  *Shapiro v. CIA*, 170 F. Supp. 3d 147, 152, 156 (D.D.C. 2016) (holding that requests seeking any and all records 'mentioning' a subject matter were appropriate under FOIA).  Request 5 specifically asks Defendants to "identify detainees who were hospitalized or transferred from detention for off-site medical care."  Compl. Ex. A at 4; *see also id.* at 5 (Request 8 asking for communications that "identify" detainees who were hospitalized and subsequently released from custody while hospitalized).  Requests for documents "identifying information" are also "sufficiently specific."  *Biear v. Att'y Gen. United States*, 905 F.3d 151, 157 (3d Cir. 2018).

The request also sets out "the specific form of document[s]" sought (including "communications, investigatory reports," "DHS OIG reports of investigation," "ICE OPR reports of investigation," "ICE and IHSC directives, policies, procedures, protocols, and trainings," "data compilations," "SIRs," and "SEN[s]," Compl. Ex. A at 3-5), "along with the applicable date range" (January 1, 2019 to present, *id.* at 2).  *Seife v. Dep't of State*, 298 F. Supp. 3d 592, 611 (S.D.N.Y. 2018).[2]  This level of specificity reasonably describes the records the ACLU seeks.

### b. Defendants' Characterization Of The Request Is Based On A Strained Reading And Avoidance Of The Substance Of The Request.

Defendants construe the ACLU's FOIA request "far more broadly than the text supports," characterizing it as significantly "more complex and burdensome than it is."  *Pub. Emps. for Envtl.*

---

[2]   Where requests do not have a specified time frame (Requests 1-3), they instead specify the relevant date of each individual detainee's death, and the location of death.

*Responsibility*, 314 F. Supp. 3d at 79.  They grasp on to the introductory language "any and all," as well as connector words "regarding," "relating to," and "related to," and claim that the requests are insufficiently clear based solely on the inclusion of those words.  Mem. 7.  Contrary to Defendants' assertions, these phrases are not determinative of whether records are reasonably described. *E.g.*, *Pub. Emps. For Envtl. Responsibility*, 314 F. Supp. 3d at 71-72 (holding that FOIA request for "any EPA documents that support the conclusions that human activity is not the largest factor driving global climate change" was reasonably described); *Shapiro*, 170 F. Supp. 3d at 152, 157.[3]

When the FOIA request is read in full, Defendants' strained reading becomes apparent. The ACLU seeks records from a *specific* time period (January 1, 2019 to present) that are related to a *specific* subject matter (ICE's release from custody of detainees who are hospitalized or receiving medical treatment at off-site medical facilities).  The standard introductory and connector words used in the FOIA request do not obscure the meaning of what the ACLU seeks.

Defendants offer one example of a request that they contend is not reasonably described: Request 9.  That request asks for documents "regarding the release of detainees from custody who are hospitalized or transferred from detention for off-site medical care, including on orders of recognizance, due to COVID-19 infection."  Compl. Ex. A at 5.  Defendants profess to be confused about whether a search should seek documents that show that a detainee's *release* was due to COVID-19, or that the detainee's *underlying hospitalization or transfer* to an off-site facility was

---

[3] Defendants also suggest that the ACLU's definitions of terms such as "documents" make the terms unduly "expansive," rather than elucidating the scope of the requests.  Mem. 3.  Not so.  The ACLU's definitions are standard and consistent with the scope of those terms as used in the Federal Rules of Civil Procedure.  *See* Compl. Ex. A at 2.  Defendants also fault the ACLU for not defining the phrase "reports of investigation" in Requests 2-3. Mem. 11-12.  It strains credulity to think that Defendants cannot understand what an investigatory report would be without further explanation.

due to COVID-19.  Mem. 8.[4]

Defendants' parsing of grammatical phrasing is easily dispensed with.  The ACLU seeks records of detainees who were initially hospitalized or transferred to other off-site medical care facilities "due to COVID-19" and who were subsequently released from ICE custody while at a hospital or other medical facility, consistent with the subject matter requested in the preceding Request 8.  If Defendants were unclear about the scope of the request, they should have "construe[d] [the] request liberally" and searched for both types of information.  *New Orleans Workers' Ctr. for Racial Justice v. Immigration & Customs Enforcement*, 373 F. Supp. 3d 16, 34 (D.D.C. 2019) (quoting *LaCedra v. Exec. Office for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003)).  Or, at the very least, they should have "ask[ed the ACLU] what [it] meant," which they "did not do."  *Leopold v. Dep't of Justice*, 130 F. Supp. 3d 32, 43-44 (D.D.C. 2015); *see id.* (rejecting agency interpretation of request as too "limited").

The cases Defendants cite are inapposite.  Unlike the requests in those cases, the ACLU's request is "precisely defined by subject matter." *Pub. Emps. for Envtl. Responsibility*, 314 F. Supp. 3d at 81 n.5.  It seeks a limited amount of information on a defined subject matter, with specific times, names, and types of documents requested.  The cases Defendants cite involve far more expansive and open-ended requests.  For example, in *American Center for Law & Justice v. Department of Homeland Security*, the plaintiff requested "any and all records" "referencing or regarding *in any way*" topics such as "*any* actions taken" to effectuate certain outcomes, and

---

[4] Defendants also express confusion as to whether Request 9 could be interpreted as seeking documents relating to the release of any detainee "who had at one point been treated off-site 'due to COVID-19.'"  Mem. 8.  Given the context of the ACLU's request and the repeated description of its search for records related to "ICE's decisions to release hospitalized detainees on their deathbed," Compl. Ex. A at 10, Defendants' professed confusion on this point makes little sense.  But to be clear: the ACLU's request does not include records relating to detainees who were not released from ICE custody while hospitalized or at other off-site medical facilities.

records on "how the government" was achieving certain goals.  Case No. 1:21-cv-01364 (TNM),

2021 WL 5231939, at *1-2, *5 (D.D.C. Nov. 10, 2021) (emphasis added).  In *Cable News Network,*

*Inc. v. Federal Bureau of Investigation*, the plaintiff requested "[a]ny and all documents" that

"constitute, refer, or *relate in any way* to *any* memoranda prepared, written and/or issue[d] by" the

FBI Director concerning numerous individuals.  271 F. Supp. 3d 108, 110 (D.D.C. 2017) (second

emphasis added and internal quotation marks omitted).  In *Dale v. Internal Revenue Service*, the

plaintiff's request did not specify what records he sought or for what years. The case was dismissed

in large part because "to do otherwise might reward [plaintiff's counsel] for its failure to engage

in meaningful and reasonable discussions" with the agency "despite repeated IRS requests to do

so." 238 F. Supp. 2d 99, 105 (D.D.C. 2002).[5]  The ACLU's request does not have the infirmities

identified in the cases Defendants cite.

---

[5] *See also Am. Fed'n of Gov't Emps. v. Dep't of Commerce*, 907 F.2d 203, 205 (D.C. Cir. 1990) (request sought "[i]nspection of *every* chronological office file and correspondence file . . . for every [] office"); *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (requesting search of "*every file* throughout all [of the FBI's] field offices") (emphasis added); *Irons v. Schuyler*, 465 F.2d 608, 612, 615 (D.C. Cir. 1972) (request for non-digitized records that were "dispersed through millions of public files" spanning a century-long time frame); *Pub. Emps. For Envtl. Responsibility*, 314 F. Supp. 3d at 80 n.4 (discussing *Hall & Associates v. EPA*, 83 F. Supp. 3d 92 (D.D.C. 2015), a case involving a request for "all records . . . that show [a] statement is incorrect," which asked agency to "make [] judgments or opine about" facts); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 57, 59, 62 (D.D.C. 2013) (request for "any and all" communications between multiple offices for which "neither time limitation nor subject matter . . . is suggested" and records that "refer or relate . . . *in any way*" to topics) (emphasis added); *Borden v. FBI*, 27 F.3d 554 (1st Cir. 1994) (Tbl.) (per curiam) (dismissing FOIA request without discussion in part because it was not "properly notarized" and did not include information to "verify the requester's identity"); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 157-58 (D.D.C. 2013) (request for "representative sample" and "reasonable variety" of material required "sifting and analysis" not required by FOIA); *Latham v. Dep't of Justice*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (request did not specify any "type of record," or "date of any record that would be responsive" or "time period or date when any record may have been created") (internal quotation marks omitted).

## II.  DEFENDANTS' UNDUE BURDEN ARGUMENT IS FLAWED

Defendants complain that records responsive to the ACLU's request cannot be located without imposing an unreasonable burden on the agencies.  *See, e.g.*, Mem. 10 ("Responding to" the request "involv[es] a huge number of potentially responsive documents").  That argument is unavailing.

First, burden is not the determinant of whether a FOIA request is valid.  As the D.C. Circuit and courts within the Circuit have held, "the number of records requested appears to be irrelevant to the determination whether they have been 'reasonably described.'"  *Yeager*, 678 F.2d at 326; *see Colgan v. Dep't of Justice*, Civil Action No. 14-cv-740 (TSC), 2020 WL 2043828, at *9 (D.D.C. Apr. 28, 2020) (stating that "the quantity of responsive records is not a basis on which to deny a FOIA request"); *see also Shapiro*, 170 F. Supp. 3d at 155; *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454-55 (D.D.C. 2014), *aff'd*, No. 14-cv-5278, 2015 WL 4072055 (D.C. Cir. June 29, 2015) (similar).  FOIA's "basic purpose,"—"to ensure an informed citizenry, vital to the functioning of a democratic society"—requires disclosure, even when that imposes a burden on the receiving agency.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).[6]

Second, Defendants' unreasonable burden argument rests on an unfair reading of the ACLU's request.  For example, Defendants contend that the request would require them to search the records of "20,000 personnel" and "200 immigration detention facilities."  Mem. 9.  That is false.  FOIA does not require agencies to "search every record system," *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), or "every file contained in [every] branch and division offices,"

---

[6] The prospect of "unusually large requests" was contemplated by Congress and is addressed in the statute.  FOIA gives agencies "additional time" to "'search for . . . a voluminous amount of separate and distinct records which are demanded in a single request.'"  *Shapiro*, 170 F. Supp. 3d at 155 (quoting 5 U.S.C. § 552(a)(6)(B)(iii)(II)).

*AFGE, Local 2782 v. Dep't of Commerce*, 907 F.2d 203, 206 (D.C. Cir. 1990).  It only requires agencies to search files "likely to contain responsive materials"—a determination that agencies are well-equipped to make.  *Oglesby*, 920 F.2d at 68; *see Leopold*, 130 F. Supp. 3d at 43 (agency could use email domains to narrow search because it "was not required to search for communications with every conceivable . . . person").

Third, knowledgeable personnel employed by Defendants will be able to respond to the ACLU's request effectively.  Under FOIA, a requestor must only describe documents so that "a professional employee of the agency who was familiar with the subject area of the request [may] locate the record with a reasonable amount of effort."  *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990).  The ACLU has done this.  Surely a professional employee familiar with the medical care of detainees would, for example, know how to search for information regarding which detainees have been hospitalized, for COVID-19 or other maladies, and subsequently released from custody while ill.  The ACLU cannot be faulted for lacking knowledge of which "particular employees" within ICE or DHS maintain that information.  *See* Mem. 9 (quoting *Am. Ctr. for Law & Justice*, 2021 WL 5231939, at *6).

Fourth, Defendants' argument must also be rejected because it is based on pure speculation. It is *the agencies'* burden to "provide [a] sufficient explanation as to why such a search would be unreasonably burdensome," *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995), and that "burden of demonstrating overbreadth is substantial," *Tereshchuk*, 67 F. Supp. 3d. at 454-55; *see* 5 U.S.C. § 552(a)(4)(B) ("burden is on the agency to sustain its action").  Contrary to Defendants' claim that they "need not introduce evidence" (Mem. 7), an agency's explanation for withholding documents cannot be divined from a "request alone."  *Shapiro*, 170 F. Supp. 3d at 155.  Rather, the agency must support its determination with "affidavits or declarations" that

substantiate its undue burden claim "with reasonable specificity." *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014); *see Shapiro*, 170 F. Supp. 3d at 155-56; *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (agency must provide "a detailed explanation . . . regarding the time and expense of a proposed search in order to assess its reasonableness").

The agencies offer no more than legal argument to explain why they cannot comply with the ACLU's request. This is fatal to their claim. "Legal arguments, after all, are not evidence." *STS Energy Partners LP v. FERC*, 82 F. Supp. 3d 323, 331 (D.D.C. 2015), *Serv. Emps. Int'l v. Castle Hill Healthcare Providers, LLC*, 234 F. Supp. 3d 89, 93 (D.D.C. 2017) ("defense counsel's statements are not evidence; they are legal arguments"). A court "will not find a search unduly burdensome on conclusory statements alone." *Hall v. CIA*, 881 F. Supp. 2d 38, 53 (D.D.C. 2012); *see Shapiro*, 170 F. Supp. 3d at 156 (rejecting agency argument submitted in "legal briefing" that a search would be unduly burdensome). Defendants' motion to dismiss must be denied on this basis.

The authorities that Defendants cite do not undermine that conclusion. The vast majority of those cases involve *summary judgment* decisions based on detailed affidavits containing specific information. *E.g.*, *Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 408, 410 (D.C. Cir. 2020); *Miller v. Casey*, 730 F.2d 773, 775-76 (D.C. Cir. 1984); *Krohn v. Dep't of Justice*, 628 F.2d 195, 196-97 (D.C. Cir. 1980); *Marks*, 578 F.2d at 262-63; *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 157-58, 163-64 (D.D.C. 2013); *Latham*, 658 F. Supp. 2d at 158 n.2; *Assassination Archives and Research*

*Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989).[7]  Defendants offer nothing of the sort here.[8]

Fifth, Defendants' conclusory statement that the request requires a search for information "which the agency does not generally create or require" appears to be inaccurate based on public record evidence.  Mem. 11 (internal quotation marks omitted).  Such evidence suggests that responsive information must exist.  Indeed, it would hardly be credible for ICE to claim that it does not keep records regarding hospitalization or medical care of people in its custody, or that it does not keep records regarding the date of release of people in its custody.

In fact, DHS has a sophisticated electronic health records ("eHR") system that "record[s] and manage[s] information related to the healthcare evaluation and treatment of detainees," including "report[s] containing detainee biographic information and the treatment" given to each detainee, information related to "claims for payments to external healthcare providers," "Medical Transfer Summary document[s]" "that accompan[y] the detainees" upon "release" or "transfer[]," and "treatment request[s]" that are logged anytime ICE "sends a detainee to an external healthcare

_____

[7] Of the many cases Defendants cite, only two cases were decided on a motion to dismiss.  As discussed above, both involved requests with considerably broader language than what is contained in the ACLU's request.  *See Am. Ctr. for Law & Justice*, 2021 WL 5231939, at *5 (requesting "any and all" records "referencing or regarding in any way" various topics); *Freedom Watch*, 925 F. Supp. 2d at 57, 59, 62 (requesting "any and all" communications that "refer or relate . . . in any way" to topics, and communications between officials for which "neither time limitation nor subject matter . . . is suggested").

[8] "[A]t the very least," the government must state "the number of . . . files" it would have to search, "the amount of time that would be required to locate documents responsive to [plaintiff's] request," *Pinson v. Dep't of Justice*, 80 F. Supp. 3d 211, 217 (D.D.C. 2015), provide "detail to show why searching" for the requested material "would result in those hours," and provide "the costs associated with the search, or whether those costs would be unusual," *Colgan*, 2020 WL 2043828, at *9.  Even so, claiming that a search would "take many hours," require "review[]" of applications "individually," and require cross-country coordination "to complete the search" is not enough to explain "why a search certain to turn up responsive documents would be unduly burdensome." *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003) (internal quotation marks omitted); *Kwoka v. IRS*, Civil Action No. 17-cv-1157 (DLF), 2018 WL 4681000, at *5 (D.D.C. Sept. 28, 2018) (holding 2,200 hours to review materials for redactions would not be unduly burdensome).

provider." U.S. Dep't of Homeland Security, Privacy Impact Assessment for the electronic Health Records (eHR) System ("eHR PIA"), DHS/ICE/PIA-037, at 2-3, 6-7 (July 24, 2013), https://perma.cc/KUD2-NWN8; *see also* U.S. Dep't of Homeland Security, Privacy Impact Assessment for the Alien Medical Records Systems ("AMRS PIA"), DHS/ICE/PIA-029, at 6 (July 25, 2011), https://perma.cc/E7RH-MUYN (if a detainee is "released" or "transferred to a long-term medical care facility for treatment, the facility gets [] the Transfer Summary Form").[9]

To report disease outbreaks (such as COVID-19) to the U.S. Centers for Disease Control and Prevention, the eHR system also has the capability of generating "ad hoc reports such as a report identifying detainees with a particular strain of the flu." eHR PIA at 8. DHS has a "Medical Payment Authorization Request Web System (MedPAR)" which is used at "[n]on-IHSC-staffed facilities that need to send detainees for treatment external healthcare providers." *Id.* at 3. All records are maintained for ten years, which covers the entirety of ACLU's request. U.S. Dep't of Homeland Security, Privacy Impact Assessment Update for the electronic Health Records (eHR) System, DHS/ICE/PIA-037(a), at 6 (Apr. 26, 2018), https://perma.cc/Y9BH-J64S; *see* AMRS PIA at 9.

In addition, ICE also has a "centralized" "*Hospitalization System*" that is "used to track detainees at any detention facility who are [] sent to the hospital to receive treatment," and a "*Significant Detainee Illness Spreadsheet*," which records detainees who have "been hospitalized, the name of the hospital, the date of admission, and the date of discharge." U.S. Dep't of Homeland Security, Privacy Impact Assessment for the Alien Medical Tracking Systems ("AMTS PIA"), DHS/ICE/PIA-031, at 3, 8 (Sept. 26, 2011), https://perma.cc/WV9X-VYHS; *see* U.S.

---

[9] The Court may consider public record information, such as this, on a motion to dismiss. *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007).

Immigration and Customs Enforcement, IHSC Directive: 03-32, Significant Detainee Illness (SDI), at 2-4 (effective Dec. 1, 2015), https://perma.cc/VRY9-36EJ (criteria for placement on SDI List includes "[a]nyone who is in intensive care for 24 hours or more" or anyone requiring "[s]ignificant coordination" to "release" "in the United States due to their medical condition"; when a detainee is "released from ICE custody" they may be taken off the SDI List and the removal will be "document[ed] in the health record" by IHSC personnel). These records are also retained for ten years. AMTS PIA at 6. In light of these systems, it is hard to credit Defendants' claim that the ACLU has requested information the agencies do not maintain or cannot easily retrieve. *See Pinson*, 80 F. Supp. 3d at 217 n.5 (expressing "skeptic[ism]" where the government does not explain why "computerized system[s]" cannot be "queried").

## III. CONCERNS ABOUT THE CLARITY OF CERTAIN INDIVIDUAL REQUESTS ARE NOT GROUNDS FOR DISMISSAL OF THE COMPLAINT

Dismissal of this case is not warranted even if the Court finds that some subparts of the ACLU's FOIA request do not "reasonably describe" the records sought. That is because individual requests are "clearly separable." *Bristol-Myers*, 424 F.2d at 938. Defendants have an "obligation" to produce responsive records once it "becomes reasonably clear as to the materials desired." *Truitt*, 897 F.2d at 544. As to requests where clarification is needed (if any), the parties can confer.[10] *See Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir. 1981), *modified on other grounds*, 671 F.2d 769 (3d Cir. 1982) (DHS "may not resist disclosure . . . unless it has first made a good faith attempt to assist [the ACLU] in satisfying" the "reasonably describes" requirement.). *Accord*

---

[10] This Circuit "has long cautioned that federal agencies may not use the 'reasonably describes' requirement to deny the public access to responsive records." *Pub. Emps. for Envtl. Responsibility*, 314 F. Supp. 3d at 74. Simply put, when asked "whether a federal executive department may refuse to search a file . . . solely on a claim that" a request was not reasonably described, this Circuit "answer[s] that question in the negative." *Truitt*, 897 F.2d at 541.

*Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995). Indeed, DHS's own FOIA regulations state as much. 6 C.F.R. § 5.3(b) provides that DHS should "inform the requester what additional information is needed or why the request is otherwise insufficient" if DHS determines that a request does not reasonably describe records. Where DHS does not "follow its own administrative process," it is not entitled to dismissal based on the requestor's failure to reasonably describe records. *New Orleans Workers' Ctr. for Racial Justice*, 373 F. Supp. 3d at 34.

After all, it is not a matter of *if* the ACLU will receive records, only *when* and *what* records. If the Court dismisses this case, the ACLU will simply file another FOIA request for the same records, re-starting the administrative clock and leading to further delay for all parties, and for the public interest in learning what ICE has been doing with individuals in its custody who are suffering from deadly illnesses.

## CONCLUSION

The government's motion to dismiss the ACLU's Complaint should be denied.

Dated:  January 5, 2022

Respectfully submitted,

/s/ Leslie C. Esbrook
Leslie C. Esbrook (D.C. Bar No. 1670737)
Alison C. Barnes (D.C. Bar No. 484184)
ROBBINS, RUSSELL, ENGLERT, ORSECK
& UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
lesbrook@robbinsrussell.com

Eunice Cho (admitted *pro hac vice*)
American Civil Liberties Union
National Prison Project
915 Fifteenth St. N.W., 7th Floor
Washington, D.C. 20005
Tel: (202) 548-6616
echo@aclu.org

17

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
  of the District of Columbia
915 Fifteenth St. N.W., 2nd Floor
Washington, D.C. 20005
Tel: (202) 601-4266
aspitzer@acludc.org

*Counsel for Plaintiff American Civil Liberties Union*